Patricia L. Peden (State Bar No. 206440)
Jesse A. Macias (State Bar No. 254794)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
2026-05-04@cases.warrenllp.com

Laurin H. Mills
WERTHER & MILLS, LLC
2121 Eisenhower Avenue, Suite 608
Alexandria, Virginia 22314
+1 (703) 547-4693
+1 (240) 912-3031 facsimile
laurin@werthermills.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| D.B., | ) Case No. |
| | ) |
| Plaintiff, | ) **FILED UNDER SEAL** |
| | ) |
| v. | ) **COMPLAINT** |
| | ) |
| JOHN DOE, COINBASE GLOBAL, INC., | ) **JURY TRIAL DEMANDED** |
| and COINBASE, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**NATURE OF THE ACTION**

1.     This action arises from a sophisticated cryptocurrency theft in which an international cybercriminal, Defendant John Doe (who may be more than one person), stole approximately ▆▆ ▆▆ in digital assets from Plaintiff's Ethereum-based wallet and laundered a portion of those assets through Tornado Cash and other services before depositing at least ▆▆▆▆ in traceable stolen funds into a Coinbase, Inc. ("Coinbase") retail-user account, where the funds remain frozen.

2.     Coinbase has acknowledged that it holds these traced funds and has indicated that a court order adjudicating ownership is required before it will release the frozen assets.

– 1 –

3.    Through this lawsuit, Plaintiff seeks (1) compensatory and injunctive relief against Doe under the Computer Fraud and Abuse Act; and (2) conversion, declaratory, and equitable relief against Doe and Coinbase, including a declaration that Plaintiff is the rightful owner of the identified frozen cryptocurrency; an order directing Coinbase to release and return the identified assets to Plaintiff; restitution; and the imposition of a constructive trust, an equitable lien, and claim-and-delivery remedy over the specific stolen property.

**THE PARTIES**

4.    Plaintiff D.B. is a citizen and resident of Puerto Rico.

5.    Defendant John Doe is an international cybercriminal whose real name is not known. John Doe may be more than one person acting together for criminal purposes.

6.    Coinbase is a Delaware corporation formed in 2012 and is a wholly owned subsidiary of Coinbase Global, Inc. Coinbase shares its headquarters or nerve center with Coinbase Global, Inc. in San Francisco, California.

7.    Coinbase Global, Inc. reincorporated from Delaware to Texas effective December 15, 2025 and maintains its headquarters or nerve center in San Francisco, California. Through its 10-K filing with the SEC on February 15, 2024, Coinbase's only reported office space in its 10-K filings were in San Francisco, California. In its most recent 10-K filing with the SEC on February 12, 2026, Coinbase's only reported office space are in San Francisco, California and New York, New York.

8.    Coinbase maintains a substantial operational presence in the San Francisco Bay Area; conducts substantial business with California customers; and maintains or controls the Coinbase retail-user account and frozen cryptocurrency that are the subject of this action. Coinbase is therefore subject to personal jurisdiction in this District, and this Court has found it has personal jurisdiction over Coinbase on many occasions. *See, e.g., Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023) (case started as a putative class action in this District); *BiT Glob. Digit. Ltd. v. Coinbase Glob. Inc.*, No. 3:24-cv-09019 (N.D. Cal. filed Dec. 13, 2024).

//

//

//

COMPLAINT

## JURISDICTION AND VENUE

9.      This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Count I and Count II arise under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 and 1964(c), and Count III arises under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

10.     This Court also has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy.

11.     This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000; Plaintiff is a citizen of Puerto Rico; Coinbase is a citizen of Delaware; and John Doe is believed to be a citizen or subject of a foreign state.

12.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (b)(2) because Coinbase resides in this District for venue purposes and a substantial part of the events and omissions giving rise to the claims occurred in this District, including Coinbase's receipt, freezing, and continued unjustified control of the stolen cryptocurrency that is the subject of this action.

13.     This Court has personal jurisdiction over Coinbase because Coinbase has substantial operations and customers in California. Under California's long-arm statute (Cal. Code Civ. Proc. § 410.10; the due process framework of *Calder v. Jones*, 465 U.S. 783 (1984), and/or Fed. R. Civ. P. 4(k)(2) (the federal long-arm for claims arising under federal law) this Court has personal jurisdiction over Doe, who is an international criminal who knew or should have known that the impact of his/her criminal activities would be felt in California and impact businesses operating in California and who may not be subject to the jurisdiction of any state's courts.

## FACTUAL BACKGROUND

14.     On August 20, 2024, D.B. was the victim of a cryptocurrency theft in the amount of at least ▮▮▮▮▮.

15.     D.B. was using the non-custodial DeFi management tool "DefiSaver" on Ethereum.

16.     D.B. held his cryptocurrency assets in the form of the stablecoin DAI. DAI is a decentralized stablecoin pegged to the U.S. dollar. Therefore, DAI stablecoins are personal property with an easily determined market value.

//

– 3 –

COMPLAINT

17.    The thief or thieves deceived D.B. into clicking on a link to a fraudulent DefiSaver login page by mimicking the appearance of the legitimate DefiSaver login but using a ".app" domain in place of a ".com" domain.

18.    When D.B. logged into the fraudulent page, the thief or thieves gained access to D.B.'s real DefiSaver account and linked wallets accessed via his personal laptop computer. The wallet was controlled through D.B.'s hardware wallet on D.B.'s laptop computer. The assets/positions existed on the Ethereum blockchain and were managed through DeFi Saver smart contracts. The defendant thief or thieves gained access when D.B. was tricked into authorizing a malicious proxy wallet or smart contract permission that transferred effective control of his hardware wallet to the cybercriminal or criminals.

19.    After obtaining access, the thief or thieves drained approximately ███████ in DAI stablecoins from D.B.'s wallet using a complex series of transactions to launder the stolen assets and conceal their source, location, and control.

20.    The attack was executed using "Inferno Drainer," a sophisticated "scam-as-a-service" platform designed to facilitate the theft of digital assets. Inferno Drainer masquerading as Coinbase has stolen at least $87 million from over 137,000 other victims. https://thehackernews.com/2024/01/inferno-malware-masqueraded-as-coinbase.html (last accessed April 23, 2026).

21.    Doe and his co-conspirators operate the Inferno Drainer enterprise as an ongoing criminal syndicate whose regular way of conducting business is the routine theft of digital assets from cryptocurrency holders.

22.    D.B., in addition to notifying law enforcement, retained Zero Shadow and Five Stones Intelligence to trace the stolen cryptocurrency.

23.    Zero Shadow and Five Stones found evidence that an individual named, or operating under the alias of, Oleksiy Oleksandrovych Gorelikhin, may have had a significant role in the laundering of the stolen cryptocurrency. On information and belief Oleksiy Oleksandrovych Gorelikhin is a citizen or subject of Ukraine.

//

//

–4–

24. Using state-of-the-art blockchain tracing and analysis techniques, Zero Shadow traced a portion of the stolen funds, including ███████████ to a Coinbase retail-user account associated with wallet address ████████████████████████████.

25. Coinbase's internal reference number for the traced Coinbase funds is ██████████

26. On November 30, 2024, Zero Shadow notified Coinbase that stolen funds linked to the theft had been deposited into the Coinbase-associated address identified above.

27. In that notice, Zero Shadow identified the relevant transaction hash as ████████████████████████████████████████ and asked Coinbase to conduct enhanced due diligence and freeze the funds associated with the identified address.

28. On December 2, 2024, Coinbase confirmed that the address belongs to a Coinbase retail user, confirmed that the funds received in the identified transaction were still on that user's account, and stated that Coinbase had implemented "friction measures" preventing dissipation of those funds pending investigation.

29. On information and belief, the identified funds remain frozen at Coinbase.

30. Plaintiff is the rightful owner of the cryptocurrency traceable to the Coinbase account identified above.

31. Plaintiff has demanded, directly and through his agents, that the frozen stolen funds be preserved and returned.

32. Coinbase has not released the frozen funds to Plaintiff and has indicated that a court order adjudicating ownership is required before Coinbase will release the frozen assets.

33. The stolen cryptocurrency held at Coinbase is specific, identifiable property traceable to Plaintiff's stolen assets.

34. Unless the Court grants relief, Plaintiff will continue to be deprived of the use, possession, and control of his property.

## COUNT I

*(Violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c))*

*(Against John Doe Only)*

35. Plaintiff realleges and incorporates by reference paragraphs 1 through 34.

36. Doe is a "person" within the meaning of 18 U.S.C. § 1961(3).

37. At all relevant times, there existed an association-in-fact "enterprise" within the meaning of 18 U.S.C. § 1961(4), operating under the name "Inferno Drainer."

38. The Inferno Drainer enterprise consists of Doe, the developers and administrators of the Inferno Drainer phishing kit, and various unknown co-conspirators.

39. Doe is distinct from the Inferno Drainer enterprise.

40. The Inferno Drainer enterprise is engaged in, and its activities affect interstate and foreign commerce.

41. The enterprise shares a common, illicit purpose: to defraud cryptocurrency holders, drain their digital wallets, and launder the stolen proceeds.

42. Doe agreed to and did participate in the conduct of the Inferno Drainer enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

43. In furtherance of the enterprise, Doe and his co-conspirators committed multiple related acts of racketeering activity, or "predicate acts," as defined in 18 U.S.C. § 1961(1).

44. These predicate acts include, but are not limited to, wire fraud (18 U.S.C. § 1343), the interstate transportation of stolen property (18 U.S.C. §§ 2314 and 2315), and money laundering (18 U.S.C. § 1956).

45. The predicate acts constitute a "pattern of racketeering activity" pursuant to 18 U.S.C. § 1961(5).

46. The pattern possesses open-ended continuity because the Inferno Drainer enterprise operates as a "scam-as-a-service" syndicate. Committing these predicate acts is the enterprise's regular way of conducting its business.

47. As a direct and proximate result of Defendant Doe's racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff suffered an injury to his business or property when he was unlawfully deprived of approximately ▮▮▮▮▮ DAI stablecoins.

//

//

//

## COUNT II

*(Violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d))*

*(Against John Doe Only)*

48. Plaintiff realleges and incorporates by reference paragraphs 1 through 47.

49. As set forth above, Doe and his co-conspirators created and operated the Inferno Drainer enterprise.

50. Doe knowingly agreed and conspired with the developers, administrators, and other unknown co-conspirators of the Inferno Drainer enterprise to conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

51. There was a meeting of the minds between Doe and his co-conspirators to pursue the enterprise's objective: to defraud cryptocurrency holders, drain their digital wallets, and launder the stolen proceeds.

52. To effectuate this conspiracy, Doe knowingly agreed that he or his co-conspirators would commit predicate acts of racketeering activity, including wire fraud (18 U.S.C. § 1343), the interstate transportation of stolen property (18 U.S.C. §§ 2314 and 2315), and money laundering (18 U.S.C. § 1956).

53. Doe knew that these predicate acts were part of a pattern of racketeering activity and agreed to facilitate the activities of those operating or managing the enterprise.

54. In furtherance of the conspiracy, Defendant Doe and his co-conspirators committed overt acts that were independently wrongful under RICO, including the specific acts that resulted in the theft of Plaintiff's funds.

55. As a direct and proximate result of Doe's conspiracy, the overt acts taken in furtherance of that conspiracy, and his violations of 18 U.S.C. § 1962(d), Plaintiff suffered an injury to his business or property when he was unlawfully deprived of approximately ▮▮▮▮▮▮▮ DAI stablecoins.

## COUNT III

*(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030)*

*(Against John Doe Only)*

56. Plaintiff realleges and incorporates by reference paragraphs 1 through 55.

– 7 –

COMPLAINT

57. Doe intentionally accessed Plaintiff's protected computers, hardware wallets, and related accounts without authorization, or exceeded authorized access, and thereby obtained information, property, and value.

58. Doe acted knowingly and with intent to defraud.

59. Doe's conduct caused loss and damage well in excess of $5,000 during a one-year period. This loss and damage includes the stolen cryptocurrency, the cost of the forensic investigation by Zero Shadow and Five Stones, and the costs and fees associated with this lawsuit.

60. Pursuant to 18 U.S.C. § 1030(g), Plaintiff is entitled to compensatory and injunctive relief against Doe.

## COUNT IV

*(Conversion)*

*(Against John Doe and Coinbase)*

61. Plaintiff realleges and incorporates by reference paragraphs 1 through 60.

62. Plaintiff owned, and had the immediate right to possess, the cryptocurrency stolen from his wallet, including the ▮▮▮▮▮ in assets traced to Coinbase.

63. Doe wrongfully took and exercised dominion over Plaintiff's cryptocurrency.

64. After notice of Plaintiff's ownership claim and the traced theft, Coinbase has continued to exercise dominion and control over the specific frozen assets and has withheld possession from Plaintiff absent a court order. While Coinbase acted reasonably in freezing the stolen cryptocurrency, its refusal to return the frozen funds to Plaintiff became unreasonable when Plaintiff provided sworn proof that he is the rightful owner and Coinbase refused to act.

65. By reason of the foregoing, Defendants have wrongfully interfered with Plaintiff's property rights.

66. As a direct and proximate result, Plaintiff has been damaged in an amount to be proven at trial, including at minimum the value of the specifically identified frozen assets, plus interest according to proof.

//

//

– 8 –

## COUNT V

*(Declaratory Relief Under 28 U.S.C. §§ 2201–2202)*

*(Against Coinbase)*

67.    Plaintiff realleges and incorporates by reference paragraphs 1 through 66.

68.    An actual, present controversy exists between Plaintiff and Coinbase concerning ownership of the frozen cryptocurrency and Plaintiff's right to immediate possession of that property.

69.    Plaintiff contends that he is the rightful owner of the identified frozen cryptocurrency traceable to the theft and that he is entitled to immediate possession of that property.

70.    Coinbase has indicated that it requires a court order adjudicating ownership before releasing the frozen assets.

71.    Plaintiff therefore seeks a declaration that: (a) Plaintiff is the rightful owner of the identified frozen cryptocurrency traceable to the theft; (b) Plaintiff is entitled to immediate possession of that property; and (c) Coinbase shall release and transfer the identified assets (even if they have been converted to a different form of cryptocurrency) to Plaintiff or to a wallet designated by Plaintiff.

## COUNT VI

*(Unjust Enrichment / Restitution)*

*(Against John Doe and Coinbase, in the Alternative)*

72.    Plaintiff realleges and incorporates by reference paragraphs 1 through 71.

73.    Defendants have received, retained, or controlled benefits derived from Plaintiff's stolen cryptocurrency. Defendant Coinbase went from being a mere custodian of disputed funds to being personally enriched when it refused to return the disputed funds to Plaintiff after he showed he was the rightful owner.

74.    It would be unjust for Defendants to retain those benefits at Plaintiff's expense.

75.    Plaintiff is entitled to restitution, including restitution in kind of the specific frozen assets, or, if those assets are moved, a money judgment equal to the value of the assets wrongfully retained or controlled.

//

//

– 9 –

## COUNT VII

*(Constructive Trust)*

*(Against Coinbase and John Doe)*

76. Plaintiff realleges and incorporates by reference paragraphs 1 through 75.

77. The identified frozen cryptocurrency held at Coinbase is specific, traceable property derived from Plaintiff's stolen assets.

78. Defendants hold or control that property under circumstances making it inequitable for them to retain any legal or beneficial interest in it as against Plaintiff.

79. Plaintiff therefore seeks imposition of a constructive trust over the identified frozen cryptocurrency, with Plaintiff as the beneficial owner.

## COUNT VIII

*(Equitable Lien)*

*(Against Coinbase and John Doe)*

80. Plaintiff realleges and incorporates by reference paragraphs 1 through 79.

81. Plaintiff has an equitable ownership interest in the identified frozen cryptocurrency and its traceable proceeds.

82. Equity requires the imposition of an equitable lien on the identified frozen assets and any traceable proceeds to secure Plaintiff's right to recovery and prevent dissipation or wrongful transfer.

## CLAIM AND DELIVERY RELIEF

**I.     Provisional Remedy Sought in Connection with Plaintiff's Property Claims**

83. Plaintiff seeks immediate possession of the specific frozen cryptocurrency identified above pursuant to Cal. Code Civ. Pro. §§ 511.010 *et seq.*

84. The identified property is specific, identifiable, and presently in the possession or control of Coinbase.

85. The property is not held under a valid lien or security interest and Plaintiff is entitled to possession of the property.

//

//

– 10 –

86.    Plaintiff seeks issuance of a writ of possession and claim-and-delivery relief, in connection with his property claims, directing Coinbase to deliver the identified frozen cryptocurrency to Plaintiff or as otherwise directed by the Court.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment as follows:

A.    For judgment against Doe on Count I;

B.    For judgment against Defendants Doe on Count II;

C.    For judgment against Defendant Doe on Count III;

D.    For judgment against both Defendants on Count IV;

E.    For judgment against Defendant Coinbase on Count V;

F.    For judgment against Defendants on Count VI;

G.    For judgment against Defendants on Count VII;

H.    For judgment against both Defendants on Count VIII;

I.    For a declaration under 28 U.S.C. §§ 2201–2202 that Plaintiff is the rightful owner of the identified frozen cryptocurrency traceable to the theft and is entitled to immediate possession of that property;

J.    For an order directing Coinbase to release and return the identified frozen assets to Plaintiff or to a wallet designated by Plaintiff;

K.    For issuance of claim-and-delivery relief, including a writ of possession or other appropriate prejudgment order, with respect to the identified frozen cryptocurrency;

L.    For imposition of a constructive trust over the identified frozen cryptocurrency and any traceable proceeds;

M.    For imposition of an equitable lien on the identified frozen cryptocurrency and any traceable proceeds;

N.    For restitution and/or disgorgement, including restitution in kind, and, if the specific assets are moved or no longer available, a money judgment in an amount according to proof;

O.    For compensatory and actual damages according to proof, and that such damages be trebled against Doe pursuant to 18 U.S.C. § 1964(c);

P.    For prejudgment and post-judgment interest as allowed by law;

Q.    For costs of suit, and for such attorneys' fees pursuant to 18 U.S.C. § 1964(c) or other applicable law; and

R.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Date:  May 4, 2026

Respectfully submitted,

*/s/ Patricia L. Peden*
Patricia L. Peden (State Bar No. 206440)
Jesse A. Macias (State Bar No. 254794)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
2026-05-04@cases.warrenllp.com

Laurin H. Mills
WERTHER & MILLS, LLC
2121 Eisenhower Avenue, Suite 608
Alexandria, Virginia 22314
+1 (703) 547-4693
+1 (240) 912-3031 facsimile
laurin@werthermills.com

*Counsel for Plaintiff*

– 12 –

COMPLAINT